```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
BANOKA, S.À.R.L., *et al.*,                                    :
                                    Petitioners                :
                                                               :      1:22-mc-182-GHW
                                                               :
                    -v –                                       :      MEMORANDUM OPINION &
                                                               :              ORDER
                                                               :
ALVAREZ & MARSAL INC, *et al.*,                                :
                                                               :
                                    Respondents.               :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

In 2020, negotiations between Westmont International Development Inc. ("Westmont") and shareholders of Clichy Victor Hugo ("CVH"), a company that operates a hotel in Paris, for the sale of CVH went sour. CVH's shareholders accused Westmont of fraud. They decided to file suit in English court. But first, they needed more evidence. That year, they filed a petition to subpoena Westmont under 28 U.S.C § 1782 ("Section 1782") in the Southern District of Texas. After that petition was denied in an opinion that was upheld by the Fifth Circuit Court of Appeals, they filed this action seeking to subpoena Respondents. Respondents and a foreign affiliate had conducted due diligence on CVH and planned to finance the doomed transaction. Petitioners seek communications regarding the transaction, as well as depositions of Respondents' employees.

Magistrate Judge Katherine Parker issued an opinion rejecting Petitioners' application.[1] Dkt. No. 51 ("Mem. & Opinion"). The Court adopts Judge Parker's opinion in part and rejects it in part. The Court holds that because Petitioners have taken concrete steps such as retaining English counsel, developing a detailed legal theory, and sending pre-suit demand letters, their proposed

---

[1] In doing so, Judge Parker assumed that the petition was a non-dispositive motion. The Court addresses this assumption below.

proceeding against Westmont satisfies Section 1782's requirement that the requested discovery be for use in a foreign proceeding.

## II.     BACKGROUND

The Court refers to Judge Parker's opinion for a comprehensive description of the facts and procedural history of the case but will briefly review the facts and procedural history relevant to this motion.

Petitioners BANOKA S.à.r.l., ATYS S.A., Renato Picciotto, Jacques Champy, and Jean Bissonnet are former shareholders of CVH.  Dkt. No. 16 ("Didelot Decl.") ¶ 3.  CVH leases a property in Paris, France, on which it operates a hotel.  *Id.*  In June 2019, CVH's shareholders invited bids to buy CVH.  *Id.* ¶ 4.  One of the initial bidders was Westmont.  *Id.*  Petitioners were dissatisfied with the initial bids, and in October 2019, Westmont offered to increase its bid in exchange for exclusivity.  *Id.* ¶ 5.  CVH accepted, and the parties entered into an exclusivity agreement.  *Id.*  They agreed that Westmont would conduct due diligence on CVH during the exclusivity period and that if various conditions were met, the parties would close on the transaction in January 2020.  *Id.* ¶ 9.

Over the following months, Westmont repeatedly delayed the closing, raising issues that the Petitioners characterize as "baseless" or "disingenuous."  *Id.* ¶¶ 13, 15.  For instance, Petitioners claim that Westmont complained about the shareholders' failure to disclose €15,000 in staffing costs for the hotel and "technical issues" related to fire safety and disability access in the hotel lobby.  *Id.* ¶¶ 15–16.  Petitioners contend that they "timely addressed" the issues despite the fact that they considered them to be immaterial.  *Id.* ¶ 17.  In December 2019, Westmont demanded a €2 million price reduction.  *Id.*  Petitioners agreed to a €1 million reduction, only, they claim, to be met with further delays in closing the transaction.  *Id.* ¶¶ 19–27.  In late February 2020, as the COVID-19 pandemic loomed, Westmont requested another significant price reduction, causing the deal to fall

2

through. *Id.* ¶ 32. In November 2020, amid the economic downturn in the hospitality industry caused by the pandemic, Petitioners sold CVH to another buyer for €7 million less than Westmont's highest bid. *Id.* ¶ 40.

Petitioners believed that Westmont entered into the exclusivity agreement with the express intention of extracting a substantial price reduction, and that Westmont failed to negotiate in good faith. *Id.* ¶ 17. They decided to pursue litigation against Westmont for fraud in England, pursuant to the forum selection clause in Westmont's initial offer letter. *See* Dkt. No. 6-1 at 6. In May 2020, Petitioners' English counsel sent a pre-suit demand letter to Westmont, as required by English law. *See* Dkt. No. 16-13. The letter detailed Petitioners' theory that Westmont had misrepresented its true intentions in entering the exclusive negotiation agreement and that it had intentionally delayed the closing of the transaction. *See id.* The letter also requested various documents, including communications by Westmont and other entities involved in the transaction. *See id.* Westmont responded in a letter characterizing Petitioners' accusations as "absurd[]" and declined to provide the requested materials. *See* Dkt. No. 6-14. Petitioners' counsel replied by attacking the sufficiency of Westmont's response and reiterating the request for documents. *See* Dkt. No. 6-15.

In December 2020, Petitioners filed an *ex parte* Section 1782 petition in the Southern District of Texas seeking discovery from Westmont. *See In re Petition of Banoka S.á.r.l, ATYS S.A. et al.*, Case No. 4:20-cv-04131 (S.D. Tex. Dec. 4, 2020) (the "Texas Proceeding"), Dkt. No. 1. The district court granted the application and later denied Westmont's motion to quash, both in brief written orders. *See Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2021 WL 5872496, at *1 (5th Cir. Dec. 10, 2021). On appeal, the Fifth Circuit remanded the application to the district court with

instructions to articulate its reasoning on a number of questions, including whether the discovery sought was "for use" in a foreign proceeding, as required by Section 1782. *Id.*

On remand, the district court again held that Petitioners had satisfied the statutory requirements of Section 1782. In particular, the court concluded that Petitioners had met the statute's requirement that the requested discovery be "for use" in a foreign proceeding because "Petitioners ha[d] extensively set out their legal theory and retained English counsel" as well as requested documents from Westmont. *Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118, at *5 (S.D. Tex. Feb. 10, 2022), *aff'd sub nom. Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2022 WL 636680 (5th Cir. Mar. 4, 2022). Nonetheless, the court exercised its discretion to deny the petition. The Fifth Circuit affirmed the district court's decision in a summary order. *Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2022 WL 636680, at *1 (5th Cir. Mar. 4, 2022).

On July 15, 2022, Petitioners filed this action. Dkt. No. 1. Unable to seek discovery directly from Westmont, they instead sought to subpoena Respondents, who were more tangentially involved in the ill-fated transaction. Respondents Elliott Associates, L.P. and Elliott International, L.P. (collectively, with Elliott Investment Management, L.P. and Elliott Management Corp., the "Elliott Respondents") were majority owners of a joint venture with Westmont called WNE Investor Sarl. Dkt. No. 36 ("Scott Decl.") ¶ 7. If the transaction between Westmont and Petitioners had come to fruition, Elliott Associates, L.P. and Elliott International, L.P. would have financed the transaction through WNE Investor Sarl. *Id.* ¶ 9. Alvarez & Marsal France SAS ("A&M France"), an affiliate of Alvarez & Marsal, Inc., Alvarez & Marsal Transaction Advisory Group, LLC, and Alvarez & Marsal Holdings, LLC (collectively, the "A&M Respondents") conducted due

4

diligence on CVH for the transaction, including alerting Westmont to the staffing cost and lobby concerns Petitioners characterize as baseless.  *See* Didelot Decl. ¶ 15.

In support of this petition, Petitioners submitted a 14-page sworn declaration by their counsel detailing the legal theory for their claims against Westmont.  Dkt. No. 15 ("Levy Decl."). The declaration identified Petitioners' proposed claims as claims for damages under the Misrepresentation Act of 1967 and common law tort and described the facts that Petitioners could allege to plead those claims.  *Id.* ¶¶ 23–29.  It acknowledged that Petitioners lacked direct evidence or sufficient circumstantial evidence of Westmont's fraudulent state of mind, which Petitioners would require to satisfy the heightened pleading standards for those claims under English law.  *Id.* ¶ 4.  The declaration also examined English caselaw and guidance published by English courts to conclude that English courts would have jurisdiction over the proposed proceeding and would be receptive to the evidence sought from Respondents.  *Id.* ¶¶ 14, 39.

On July 21, 2022, the Court referred this action to Magistrate Judge Katherine Parker.  Dkt. No. 13.  Respondents filed their oppositions to the petition on September 28, 2022.  Dkt Nos. 29–38.  Petitioners filed a reply on October 28, 2022.  Dkt. No. 41.  Judge Parker held oral argument on January 17, 2023.  Dkt. No. 48.

Judge Parker issued an opinion denying Petitioners' application.  *See* Mem. & Opinion.  She reasoned that while Petitioners had satisfied Section 1782's first and third statutory requirements— showing that Respondents "reside[d]" in this district and that Petitioners were "interested persons" in the proposed litigation—they had failed to satisfy the second requirement of showing that the requested discovery was "for use" in a foreign proceeding.  *Id.*

Petitioners later filed timely objections.  Dkt. No. 52 ("Pet's Obj.").  Petitioners argued that Judge Parker had created an "extra-statutory barrier" that required Petitioners to possess sufficient evidence to prove their claims.  Pet. Obj. at 2–3.  Respondents then filed oppositions.  Dkt. Nos. 56

5

("Elliott Opp'n") and 57 ("A&M Opp'n"). Elliott Opp'n at 16; A&M Opp'n at 14. The issue was fully submitted to the Court when Petitioners filed a reply. Dkt. No. 60.

### III. LEGAL STANDARD

#### A. Standard of Review

As a threshold matter, the Court notes that there is uncertainty regarding the appropriate legal standard for its review of Judge Parker's opinion. As Respondents point out, Second Circuit district courts have historically treated Section 1782 petitions as non-dispositive, which would require the Court to review Judge Parker's opinion for clear error. *See, e.g.*, *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 342 (S.D.N.Y.), *aff'd sub nom. In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019). Petitioners urge the Court to review Judge Parker's opinion *de novo*, as a report and recommendation on a dispositive motion. Petitioners argue that this standard of review would be consistent with Ninth Circuit's recent holding in *CPC Patient Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022).

After the parties filed their briefs, the Second Circuit concluded in a summary order that it "lack[ed] jurisdiction" over a "magistrate judge's nonfinal order" denying a Section 1782 petition. *Associacão dos Profissionais dos Correios v. The Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023). It remanded the matter to the district court with instructions that "the magistrate judge's order be treated as a report and recommendation." *Id.* Several magistrate judges in this District have interpreted that order as guidance that courts should treat Section 1782 petitions as dispositive motions. *See, e.g.*, *In Re Ex Parte Application of IBIUNA CREDITO GESTÃO DE RECURSOS LTDA., et al., Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 To Take Discovery for Use in Proceedings in the Federative Republic of Brazil.*, 2024 WL 1077559, at *2 (S.D.N.Y., 2024) ("While the Second Circuit did not explain its reasoning, the theory would be that the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may

6

proceed is dispositive. I therefore make a Report and Recommendation on the Application rather than issuing an Opinion and Order.").

The Court need not resolve the question of the proper standard of review here. Under either standard of review, Petitioners satisfied the "for use" requirement of Section 1782.

A district court does not review a magistrate judge's opinion on a non-dispositive motion unless a party timely objects. Fed. R. Civ. P. 72(a). An objection directed at a non-dispositive matter decided by the assigned magistrate judge will not be "modified" or "set aside" unless the magistrate judge's ruling is "clearly erroneous or is contrary to law." *Id.* "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Securities, Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (citing *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Thai Lao Lignite*, 924 F. Supp. 2d at 512 (quoting *Moore v. Publicis Groupe*, 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012)). A magistrate judge's order is clearly erroneous where "'on the entire evidence,' [the district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *McFarlane v. First Unum Life Ins. Co.*, 2017 WL 4564928, at *2 (S.D.N.Y. Oct. 12, 2017) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2016 WL 4530890, at *1 (S.D.N.Y. Mar. 24, 2016)).

### B. Section 1782 Legal Standard

In evaluating a Section 1782 petition, "a district court must first consider [Section 1782's] statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Section 1782 requires that: "(1) the

7

person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Id.* The petitioner bears the burden of establishing that the three requirements are met. *See In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 128 (2d Cir. 2017) ("Section 1782 applicants must meet certain 'statutory requirements.'"); *see also In re Application of Chevron Corp.,* 736 F. Supp. 2d 773, 780 (S.D.N.Y. 2010) ("[A] party seeking disclosure under Section 1782 must satisfy the requirements of the statute.").

If the petitioner establishes that the requirements are met, the district court has discretion to grant the petition. The Supreme Court articulated four factors to guide district courts in exercising this discretion:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which event 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–265 (2004)).

In exercising its discretion, a court should also consider the "twin aims of the statute," namely "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (quotation marks and citations omitted); *accord Brandi-Dohrn*, 673 F.3d at 81. "[C]ourts have wide discretion to determine whether to grant discovery, and can tailor any requested discovery 'to avoid

8

attendant problems.'" *In re Postalis*, No. 18-MC-497, 2018 WL 6725406, at *2 (S.D.N.Y. Dec. 20, 2018) (quoting *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996)).

## IV. DISCUSSION

Respondents did not object to Judge Parker's determination that Respondents "reside" in this district such that the first statutory requirement of Section 1782 is satisfied. Mem. & Opinion at 9. Respondents also have never disputed that the Petitioners have established that they are "interested person[s]" such that the third statutory requirement of Section 1782 is satisfied. Assuming Judge Parker's conclusions represent an opinion on a non-dispositive motion, the Court need not review those conclusions to which neither party has objected. Fed. R. Civ. P. 72(a). But reviewing those conclusions for clear error, as it would if Judge Parker's opinion were a report and recommendation on a dispositive motion, the Court finds none. *See* 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). Accordingly, the Court adopts Judge Parker's opinion with respect to those issues.

However, Petitioners timely objected to Judge Parker's conclusion that they failed to satisfy Section 1782's remaining requirement—that the requested discovery be "for use" in a foreign proceeding. The Court finds that on this record, Petitioners have established that the requested discovery is for use in a foreign proceeding.

To satisfy the "for use" requirement of Section 1782, a petitioner must show "that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). "The key question . . . is not simply whether the information sought is relevant, but whether the [petitioner] will actually be able to *use* the information in the proceeding." *Id.* (emphasis in the original). "[A] district court should not consider the discoverability of the evidence in the foreign proceeding . . . ." *Brandi-Dohrn*, 673 F.3d

9

at 82; *see also Intel*, 542 U.S. at 259–260 (rejecting the proposition that Section 1782 "bar[s] a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction"). Nor should a court "consider the admissibility of evidence in the foreign proceeding." *Brandi-Dohrn*, 673 F.3d at 82.

A petitioner also need not show that the foreign proceeding in which it seeks to employ the requested discovery is "'pending' or 'imminent' but merely "within *reasonable* contemplation." *Certain Funds*, 798 F.3d at 123 (quoting *Intel Corp.*, 542 U.S. at 247) (emphasis in the original). "At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124.

Petitioners have established that their proposed English proceeding against Westmont is within reasonable contemplation. First and foremost, Petitioners' counsel has developed a detailed legal theory for the proposed suit and submitted to the Court a 14-page declaration describing that theory and its factual basis. *See* Levy Decl. In the declaration, counsel identified Petitioners' proposed causes of action against Westmont under English law and the facts Petitioner would allege to plead those claims, as well as explaining that English courts would be receptive to the evidence Petitioners sought from Respondents. *See id* ¶¶ 14, 23–29, 39. Second Circuit courts have found that similar actions, standing alone, suffice to show that a suit is within reasonable contemplation. *See, e.g.*, *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (finding this requirement satisfied because "petitioners have sworn that they intend to file a criminal complaint against [a defendant] in the Luxembourg Criminal Court and have articulated a specific legal theory on which they intend to rely"), *aff'd*, Fed. App'x. 882, 885 (2d Cir. 2019); *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018) (finding this requirement satisfied because

10

petitioner stated that it intended to bring further proceedings against an adversary and "articulated a theory on which it intended to litigate"); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement.").

Moreover, Petitioners have retained English counsel and sent two pre-suit letter demand letters to Westmont requesting documents and other information. See Dkt. Nos. 16-13, 16-15. Those actions provide further support for the conclusion that the suit against Westmont is within reasonable contemplation. *See, e.g.*, *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018) ("[O]bjective" indications of whether a suit is within reasonable contemplation include "hiring German litigation counsel, retaining experts, and sending a detailed demand letter"). Therefore, Petitioners have shown that their proposed proceeding is "more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 124.

In the Texas Proceeding, the Southern District of Texas arrived at the same conclusion. The court held that because "Petitioners ha[d] extensively set out their legal theory and retained English counsel" as well as "sent letters to Westmont outlining their legal theory and requesting that Westmont produce documents voluntarily," they had demonstrated that the proceeding was within reasonable contemplation. *Banoka*, 2022 WL 480118, at *5 (S.D. Tex., 2022). The Fifth Circuit affirmed that ruling. *See Bissonnet*, 2022 WL 636680, at *1 (5th Cir. 2022) (per curiam).

The Court also does not share Judge Parker's concern that Petitioners' application is a "fishing expedition" like those frequently rejected by courts in this circuit. Mem. & Opinion at 13. In *In re Hansainvest Hanseatische Inv.-GmbH*, Judge Sullivan of the Second Circuit, sitting by designation in the Southern District of New York, found that a case "d[id] not fit the profile of a fishing expedition" because the petitioners had retained counsel, retained experts, sent a detailed

11

pre-suit demand letter, and represented that they had an intent to litigate. 364 F. Supp. 3d 243, 250. Like in that case, here, the "contours of the potential litigation are already well-defined." *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 250. In addition to retaining counsel and sending a detailed pre-suit demand letter, Petitioners have submitted a sworn declaration from their counsel describing Petitioners' proposed claims and the factual basis for those claims. *See* Levy Decl. Accordingly, Petitioners have satisfied Section 1782's for use requirement.

The Court's conclusion diverges from Judge Parker's for two reasons. First, Judge Parker placed considerable weight on Petitioners' concession that they lacked sufficient evidence to adequately plead their proposed claims under English Law. See Mem & Opinion at 12. In their objections, Petitioners argue that in doing so, Judge Parker "create[ed] an extra-statutory barrier to Section 1782 discovery by requiring an applicant to prove its case before it can obtain discovery in aid of a contemplated foreign proceeding." Pet. Obj. at 2. Imposing such a requirement would certainly run afoul of Second Circuit precedent. "A district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's 'practical ability to inject the requested information into a foreign proceeding.'" *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132). Therefore, it would be inappropriate for Judge Parker or the Court to require that Petitioners "prove [their] case" in order to obtain the requested discovery. Pet. Obj. at 2.[2]

But Petitioners' objections mischaracterize Judge Parker's analysis. Far from requiring

---

[2] In addition, the Second Circuit has never held that Section 1782 requires that a petitioner possess sufficient evidence to adequately plead her claims. In *Mees v. Buiter*, the Second Circuit opined that "a necessity requirement would be unwise[,] as well as in tension with the aims of section 1782." 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995)) (alterations in the original). Though the question in *Mees* was whether Section 1782 required that the requested materials be necessary to commence a proceeding, rather than whether it required that they not be, the Second Circuit also opined that "§ 1782 makes no mention of necessity, and in several other contexts we and the Supreme Court have declined to read into the statute requirements that are not rooted in its text." *Id. See also In re Mutabagani*, 22-mc-299 (VB), 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023) (granting Section 1782 petition) (holding that a petitioner's admitted need for "the discovery requested here to satisfy Saudi Arabian

Petitioners to prove their case, she merely considered Petitioners' concession that they lacked sufficient evidence to commence their proceeding as an indication that their suit was not within reasonable contemplation. *See* Mem & Opinion at 12–13. The Court appreciates Judge Parker's concern. But it holds that this concern does not outweigh the objective indications, detailed above, that the suit is within reasonable contemplation. Second Circuit courts have repeatedly held that such objective indications are sufficient to demonstrate that a proceeding is within reasonable contemplation. *See, e.g.*, *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d at 249; *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4.

Second, Judge Parker placed considerable weight on her judgment that Petitioners lack a sufficient "factual basis" for their belief that Westmont acted with fraudulent intent.[3] Mem. & Opinion at 12. In particular, Judge Parker opined that there were "far more plausible" explanations for Westmont's conduct than fraud. Mem. & Opinion at 12. The Court also appreciates this concern. However, the Court reiterates that "[a] district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's 'practical ability to inject the requested information into a foreign proceeding.'" *IJK Palm LLC.*, 33 F.4th 669 at 680 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132) (distinguishing proposed proceedings lacking merit from proposed proceedings that would first require clearing numerous procedural barriers); *see also In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F. Supp. 3d 74, 84 (S.D.N.Y. 2022) ("[W]e decline to probe the validity of the Madagascar criminal proceeding . . . on the substance of the charges . . . ."),

---

pleading requirements" did not render his action "purely hypothetical" in light of objective indications that the litigation was within reasonable contemplation).

[3] Judge Parker also placed much importance on the passage of approximately two years between the end of Petitioners' negotiations with Westmont and their commencement of this action. The Court disagrees that this factor weighs heavily against a finding that the suit is within reasonable contemplation. The Court notes that this delay occurred during a global pandemic. Additionally, during this time, Petitioners unsuccessfully sought discovery from Westmont in the Texas Proceeding. In any event, even far longer lapses of time do not necessarily overcome objective indicia that proceedings are within reasonable contemplation. *See In re Mutabagani*, 2023 WL 2811621, at *3 (finding that a proposed proceeding was within reasonable contemplation despite a five-year lapse of time).

*modified on reconsideration sub nom. In re Bouka, No.* 22MISC92RAGWG, 2023 WL 1490378 (S.D.N.Y. Feb. 3, 2023). Therefore, this concern also does not outweigh the objective indications that Petitioners' suit is within reasonable contemplation.

Judge Parker's and Respondents' comparison of this case to *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020) is unpersuasive.[4] In *Mangouras*, the Second Circuit held that a proceeding was not within reasonable contemplation because, among other things, the petitioner failed to articulate a "sufficiently concrete basis for [his] belief" that the evidence he requested existed. 980 F.3d 88 at 101. However, *Mangouras* does not stand for the proposition that a weak factual basis for a petitioner's proposed claims is fatal to a Section 1782 petition, and it is easily distinguished from this case. The Second Circuit explicitly declined to articulate "'what precisely an applicant must show to establish' that a proceeding is more than speculative." *Id.* at 102 (quoting *Certain Funds*, 798 F.3d at 123). It concluded that a petitioner had failed to meet that requirement based in part on his failure to articulate a legal theory for his proposed proceeding and his representation that he would determine the content of his proceeding, as well as the proper jurisdiction and defendant, based on the evidence he obtained from his Section 1782 petition. *Id.* at 101. In contrast, here Petitioners have clearly articulated the legal theory for their proposed proceeding as well as identifying the forum and defendant. Therefore, this precedent does not alter

---

[4] The other Second Circuit decision that Judge Parker and Respondents rely upon is also distinguishable from this case. In that case, "all that the [movants] alleged before the district court was that they had retained counsel and were discussing the *possibility* of initiating litigation. Accordingly, at the time the evidence was sought . . ., the [movants] had done little to make an objective showing that the planned proceedings were within reasonable contemplation." *Certain Funds*, 798 F.3d at 124 (emphasis in the original). Here, Petitioners have developed a detailed legal theory for their case and have represented that they will be able to file their case once they obtain evidence that will allow them to adequately plead that Westmont had fraudulent intent. Additionally, in *Certain Funds*, five years—as opposed to less than two—had elapsed between the events that gave rise to the hypothetical litigation and the institution of the Section 1782 proceeding. *Id.* at 116.

the Court's conclusion that Petitioners' proceeding is within reasonable contemplation.

## V. CONCLUSION

Accordingly, the Court holds that Petitioners have satisfied the "for use" statutory requirement, as well as the other two statutory requirements of Section 1782. Judge Parker did not reach the second step of the Section 1782 analysis, in which a court must determine whether to exercise its discretion to grant the application. The Court will hold a telephone conference regarding this issue on April 5, 2024 at 3:00 p.m. The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available online, for the dial-in and other information regarding telephone conferences.

SO ORDERED.

Dated: March 22, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge